Yes, thank you, Your Honor. May it please the court and counsel. My name is Mark Meyer. I'm representing the appellant Levi Miller. Mr. Miller is serving a sentence for the crime of possession of a firearm as a felon. He entered a guilty plea and reserved the right to argue on appeal that a warrant that was issued that led to the seizure of the firearm in question was obtained in violation of Franks v. Delaware. Franks held that a facially sufficient affidavit application for warrant may be challenged on the ground that it includes deliberate or reckless falsehoods. And this rule has been extended to allow challenges to applications for warrant based on alleged deliberate omission of material facts. And it's the deliberate omission of material facts from the application for warrant that is the basis for our argument. There are other issues raised in the appeal as well, but this warrant issue is the one I'm going to focus on. Well, if you would, tell us what was missing from the warrant that would have in essence worked an act of deception on the magistrate. The key words, Your Honor, are he didn't even see us. He didn't even see us. Those are words that were uttered by Kayla Borentrager while she was being interviewed by one of the Waterloo Police Department officers who prepared the application for warrant. These are material words because she was present with the person Tequila Latham who had called into the police office and said that Mr. Miller was seen, came out of his apartment with a firearm holding a shotgun and then pointed it at her, Ms. Latham. Ms. Borentrager was with Ms. Latham at the time and told the police he didn't even see us. That was omitted from the application for warrant along with other things and that went directly to the credibility of what Ms. Latham said would be important to any judge who's contemplating issuing a warrant. The fact that this was a deliberate omission is basically not contested. One of the officers was asked, well, why didn't you include what Borentrager said in the application for warrant? And he says, well, it's because Latham was the one that called in the report so I just included what she said. So what he's doing is essentially the same thing he would do if he was swearing on a complaint. He would just present one side of the story. He wouldn't include the whole thing. But you can't do that, arguably, when you're making an application for warrant because you have to include material matters in that application. It's not up to the judge. If the judge is not acting as a filter or a guardian of the bridge between issuance of a warrant and not, then we might as well just have the police decide whether warrants are going to be issued. So that's why it's important is that it was an omission of a material fact and it was deliberate. There are other things the police knew that included in the application, such as that one of the officers went and talked to Latham's daughter in the house near where this incident occurred and the daughter didn't say anything about there being any sort of disturbance that she was aware of either, but that her mom, Latham, had gone to go to the grocery store. That's all the daughter knew. A neighbor was interviewed by the officers as well, and the neighbor said, well, I didn't really observe any disturbance except for Mr. Miller and his wife arguing. So these are all things that directly affected the credibility of Ms. Latham, and they weren't included in the warrant. I think then that the remedy is that Latham sent the police out of the excise from the warrant to do that. There's not enough left to justify issuance of the warrant. The district court should have granted our motion to suppress. Counsel, I did have a question on the warrantless entry and the suppression of evidence, but I don't see what evidence you want suppressed based on the warrantless entry. I don't know that they discovered any evidence. Well, it was matters that were actually, I mean, the firearm was seized during the entry, but that was after a warrant was obtained. So as far as what was obtained beforehand, it would just be observations about the location. I think nothing particularly material. But wouldn't that be more of a basis for a civil rights claim rather than a motion to suppress? Well, yeah, it probably would be, and I wouldn't be surprised if Mr. Miller might not be interested in that. But that's not before us today. What's that? That's not before this court. No, it's not. No, the focus of the argument is the issuance of the warrant. But just to clarify, the officers claim they didn't see the gun or seize the gun before the warrant was executed. If that's the gist of your question, it was the issuance of the warrant that led to the discovery of the gun. I'm going to reserve the rest of my time for rebuttal, if I may. Yes, you may. Thank you, Mr. Meyer. Ms. Neidel. May it please the court, Emily K. Neidel, Assistant United States Attorney from the Northern District of Iowa, representing the United States of America. I want to start with discussing the defendant's reply brief. At page 15, the defendant provides a modified version of the affidavit or addendum in this case, suggesting that is how the court should read it and assess whether or not there's probable cause. Defendant's version, pardon me, doesn't comply with the law of the circuit or in general Frank's law. Instead, what the court should do with regard to the affidavit, should it get to that step, is include any misleading information or change it, alter it. And in this case, the misleading information and the only thing that's been alleged is the statement with regard to whether Mr. Thomas or Mr. Bovey interviewed two witnesses. With regard to the omissions, the solution is not, as defense counsel suggests, that information regarding Ms. Latham should be excised, but instead, alleged omitted information should be added. Based on the information the defense counsel provided today and is argued in this brief, that would essentially be additional information regarding the interview specifically of Ms. Bontrager. I would note that that information still puts a firearm in this defendant's hand in what was described by the court as a hostile situation. A situation where multiple witnesses and all the witnesses that were outside during this described as a defendant at the same time using phrases such as MFR multiple times as he was looking. In general, we need to, in this case, look at the steps Frank requires and the case law requires. Step one, defendant needs to make a substantial showing to be entitled to a hearing. This determination in this case would be made prior to any testimony of any witnesses because the defendant's attempt to make a substantial showing was limited to his admissions of some recordings, videos, and reports. Here, the district court properly found the defendant did not make a substantial showing and there was no indication of intentional or reckless omissions. The court's analysis can stop there. It doesn't need to go further, but in this case, if we do take the next step and omit and insert omitted facts, correct the Bobie-Thomas incorrect statement, there is still probable cause in this warrant. Defense counsel relies somewhat on the testimony in his argument, but would note that that's not part of the preliminary showing. I also want to talk a little about Iowa assault law as it is relevant both to the warrant issue as well as the issues relating to sentencing. One way to commit an assault in the state of Iowa is to point a firearm at another individual. Additionally though, under 708.1 subsection 2, subsection b, any act that is intended to place another in fear of immediate physical contact which will be painful, injurious, insulting, or offensive and coupled with the ability to execute the act. So then in 708.2 subsection 3, a person commits an assault as defined in 708.1 to just discuss and uses or displays a dangerous weapon, in this case that firearm, the start-off shotgun, in connection with the assault is guilty of an aggravated misdemeanor. The aggravated misdemeanor part obviously being important for the sentencing issue, but when we're looking at the analysis of probable cause and potential reckless information, it's important to note that there's still probable cause regardless of whether you believe the firearm was actually pointed at these individuals. The fact that he has the firearm and is acting in a way that would make them fearful of the enumerated options makes it so. I guess I'm more confused now than I was before. Is it assault in the state of Iowa to merely be carrying the weapon or do you have to display it in a threatening manner and if so, what language again describes that type of assault? So it can be a crime to carry it. We have a carrying weapons statute and defense counsel submits. But he's in his own home here. Well he's not. He actually comes out of the apartment. He walks around the building with it and so I think we can debate whether or not. This isn't a Walker case is it? It's not and I'd like to focus on the assault, but I wouldn't concede that he wasn't carrying a weapon illegally. Under the Iowa law, any act, so including in this case walking around with a firearm, that it's intended to place another in fear of immediate physical contact which would be painful, injurious, insulting, or offensive coupled with the apparent ability to do so. So these individuals in particular, Ms. Latham and Mr. Cole testified that they were worried they were going to be shot. That they could have been shot. In general, all four people who, Ms. Bontrager, Ms. Cole, Mr. Cole, Ms. Latham, all testified that they were afraid they either went into the house or remained in the house because of this. So they were fearful of this. So it doesn't require the actual pointing. Are the elements of the crime dependent upon the subjective feelings of the people? It's a general intent crime. So it's what the intent is of the person, but it's evidenced by what was the reaction and what were the feelings of the individuals that were being pardon me, the Frank's law. The steps in this case, defense counsel does not follow properly, and if you properly follow the steps with regard to the Frank's argument in this case, ultimately we're left with an affidavit that would still have probable cause for offenses committed under Iowa law. The court touched briefly with defense counsel on the warrantless entry, so I will address it as well. In this case, nothing was discovered during the time that would have been evidentiary from the decision to make, to get the warrant, to the time where the warrant, if you will, shows up on scene. The search doesn't occur until the physical paper is there. So counsel, it seems to me that that issue is probably moved, but I did want to ask you, what were the exigent circumstances that justified the warrantless entry here, given that they'd already talked to Miller for 45 minutes without any incident, the situation seemed to be calm, and it looked to me like Bovey entered when his sergeant told him to, not based upon some exigent circumstances. Well, I think the exigent circumstances continued to build. I think they were present when officers arrived. At that point, the information they had was regarding the use of a firearm, potentially. The defendant himself admitted he had a weapon and he had gone downstairs with two other people who were also armed. None of those people claimed firearms, but were armed. Would you agree, counsel, wouldn't you, that the mere presence or suspected presence of a firearm in a residence is not an exigent circumstance for a warrantless entry? If that was literally all, but in this case we don't have that. We instead have somebody coming down, using foul language, and holding the firearm as it's described, ready to shoot, not in a subtle carrying it, putting it away in your car. But we also have a 45-minute period of calm. Not necessarily calm. Mr. Miller continued to talk to law enforcement. He described incidents where a bomb had been found in his house. He described then an incident, as part of that incident, that he alleged that he was taken out to a cornfield and beaten. Things were not calmed down. Law enforcement continued to attempt other ways, but once law enforcement was ready to leave for the warrant, at that point, the choice was they could leave the defendant in there, and although potentially calm, also had the ability to go in, obtain the weapon that had been alleged, potentially destroy evidence. Now I understand there's been a suggestion by defense counsel, well you can't just flush that down the toilet, even a big one. But in this case it could have been dismantled. Even in the short period that Mr. Miller had, he managed to at least throw a t-shirt over it. Not a successful attempt, not a successful hiding of the firearm, but he certainly made an attempt. It sure seems like an awfully big expansion of exigent circumstances under our case law. This is not cocaine, it's a shotgun. A shotgun, but that's not the only thing that they're looking for. Ammunition is also an item that was listed specifically in this warrant and could certainly be destroyed. And again, given the condition of this residence, the fact that he could hide it and law enforcement would instead have to be there looking through his things for longer because it wasn't seized. And again, the seizure or the search that occurred, if you'd even call it, was a quick look to make sure no one else was in the residence and then everyone stayed in the living room with the exception of when they needed to use the restroom. I see my time is up, so I, unless there's further questions, will just ask that the court affirm the district court's rulings in this case and sentence. I don't see any questions, thank you, Ms. Neidel. Mr. Meyer, your rebuttal. Your Honor, our position is not only was there sufficient basis shown for conducting a Frank's hearing, there's sufficient information in the argument that, well, even if you excise everything that Latham said, there's still evidence that an assault occurred. First of all, that determination ought to be made by a judge in the first place. I mean, the gist of the argument is the police took it upon themselves to decide what was important or not. And a judge never got to make that violation of Frank's because material omissions were made. The other thing, just as sort of a legal issue, that if you can't see someone, it's difficult to put them in fear. If a person is walking down the stairs, doesn't see anybody, but has a gun, they're not assaulting the person he doesn't see. So I don't think there's an assault of any sort. So for the reasons set forth in the brief, which goes into this in more detail and the arguments today, I'd ask the court to grant our relief requested. Thank you very much. Thank you, Mr. Meyer, and the court appreciates your Mr. Miller under the Criminal Justice Act. Thank you. Thank you also, Ms. Neidl. We will take the case under advisement and render decision in due course. Thank you.